IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN PENDLETON, for himself and all others similarly situated, <br>       Plaintiff, <br>    v. <br><br> FIRST TRANSIT, INC., <br>       Defendant. | Case No. _____ <br><br> JURY TRIAL DEMANDED |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Steven Pendleton ("Plaintiff"), by and through his undersigned attorneys, hereby makes the following allegations against First Transit, Inc. ("Defendant") concerning his acts and status upon actual knowledge and concerning all other matters upon information, belief and the investigation of his counsel:

## NATURE OF THE ACTION

1.  Plaintiff brings this action to redress Defendant's common policies and practices that deny overtime wages to Paratransit Drivers for work they perform during "O Time," which is scheduled time spent waiting for passenger pick-ups during which Drivers are taken off-the-clock despite having to comply with a long list of requirements that severely limit their freedom while serving Defendant's business interests.  Defendant's O-Time practices violate the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*., ("FLSA") by denying overtime premium wages to its employees for scheduled work they perform with Defendant's knowledge and from which Defendant receives a substantial benefit.

2.  This action is related to *Stewart v. First Transit, Inc.*, E.D. Pa. Case No. 18-cv-3768-PD, filed in this Court on September 5, 2018, which asserted unpaid overtime claims based

1

on the same factual allegations. *See Stewart* Complaint [Doc. 1]. This Court granted FLSA conditional certification in the *Stewart* case on March 18, 2019. *See* Order [Doc. 23]. The Parties in *Stewart* negotiated a settlement for 172 opt-ins, who released their wage and hour claims against Defendant through September 30, 2019. *See Stewart* Settlement Agreement, ¶ 5(a) [Doc. 91-1]. This Court granted final settlement approval in the *Stewart* case on December 30, 2019. *See* Order [Doc. 93].

3. Because First Transit has not changed its O-Time policies and practices and there are additional Paratransit Drivers who wish to vindicate their unpaid wage rights, this action is brought for all Paratransit Drivers who have worked in the First Transit depots in Redding, CA, Santa Cruz, CA, DuPage, IL, Hunterdon, N.J., Cuba, N.Y., Durham, N.C., Xenia, OH, Bethel Park, PA, Frankstown, PA, Conshohocken, PA, Philadelphia, PA, Pike Street, PA and Fort Bend, TX in any week during the maximum limitations period, including everyone who opted-in to *Stewart,* whose claims are limited by agreement to the period since October 1, 2019.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction." This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the FLSA.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District: Plaintiff resides in this District, Plaintiff worked for Defendant in this District, Plaintiff suffered the losses at issue in this District, Defendant has significant business contacts in this District, Defendant is alleged to have engaged in the wrongful conduct at issue in this District, and actions and omissions

giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

6. Plaintiff Steven Pendleton is an individual who resides in Philadelphia County, PA. From 2005 to present, Mr. Pendleton has worked as a full-time, hourly Paratransit Driver at the First Transit depot in Conshohocken, PA. Plaintiff is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint and has signed and filed a Consent Form to join this litigation. *See* Pendleton Consent Form (Exhibit A).

7. Defendant First Transit, Inc. ("First Transit") is a Florida Foreign For-Profit Corporation based in Cincinnati, Ohio. *See http://www.firstgroupplc.com/about-firstgroup/first-transit.aspx* (accessed Aug. 21, 2018); *https://www.corporationwiki.com/Ohio/Cincinnati/first-transit-inc-3603701.aspx* (accessed Apr. 1, 2020). "First Transit is one of the largest private sector providers of public transit management and contracting in North America," employing 19,500 people and providing fixed-route bus services, paratransit services, shuttle bus services and vehicle maintenance services from 300 locations in 39 states. *See https://www.firstgroupplc.com/~/media/ Files/F/Firstgroup-Plc/signpost-documents/2019-factsheets/first-transit-2019-lr-final.pdf* (accessed Apr. 1, 2020).

8. Throughout the relevant period, First Transit has owned and exercised operational control over all significant business functions relating to its Paratransit Drivers, including: setting and implementing the compensation, hours of work, overtime, scheduling and timekeeping policies and procedures at issue in this matter, providing training on these policies and procedures, scheduling Paratransit Drivers' work, creating Paratransit Drivers' daily manifests, tracking Paratransit Drivers' hours worked and setting and paying Paratransit Drivers' wages.

**BACKGROUND FACTS**

9. Defendant employs hourly Paratransit Drivers who, among other things, operate and maintain Defendant's vehicles, provide safe, high-quality ADA paratransit services to Defendant's riders, collect fares, perform pre- and post-trip vehicle inspections, complete written reports concerning passengers, accidents and incidents and provide excellent customer service. *See* https://apply.firstgroupcareers.com/vacancy/paratransit-driver-16310/16336/description/ (accessed Apr. 1, 2020).

10. Defendant maintains common compensation, hours of work, overtime, scheduling and timekeeping policies and procedures for all hourly Paratransit Drivers that include:

   a. providing paper and electronic manifests showing Paratransit Drivers' daily scheduled customer drop-offs and pick-ups;

   b. routinely scheduling Paratransit Drivers for O-Time gaps between customer drop-offs and pick-ups;

   c. requiring Paratransit Drivers to hit the "in service" button at the start of each O-Time gap to inform the Dispatcher they are available for an unscheduled ride;

   d. requiring Paratransit Drivers to wait up to 30 minutes for the Dispatcher to provide them with an unscheduled ride; and

   e. paying Paratransit Drivers for the first 30 minutes of O-Time (while they wait for the Dispatcher to provide a ride) but, if an unscheduled ride is not available, taking Drivers off-the-clock until their next scheduled pick-up, typically two to six hours later.

10. During O-Time gaps, although they are off-the-clock, Defendant's Paratransit Drivers must comply with a long list of requirements that severely limit their freedom while unilaterally benefitting Defendant and serving its business interests, including:

   a. staying within sight of their vehicle at all times;

   b. remaining constantly available to the Dispatcher;

   c. remaining in position and prepared for their next pick-up;

4

    d.    refraining from personal cell phone use;

    e.    refraining from using their vehicles for personal trips;

    f.    meeting Company appearance guidelines;

    g.    maintaining records of all incidents or accidents involving their vehicle;

    h.    being responsible for all damage to their vehicle;

    i.    being responsible for all fares kept in their vehicle;

    j.    being responsible for all fuel usage by their vehicle; and

    k.    being subject to discipline, up to and including termination, for violating these provisions.

11.    Defendant employs Road Supervisors, equipped with GPS devices showing the location of all paratransit vehicles, to drive around, identify policy violations and hold Paratransit Drivers accountable for their conduct during O-Time gaps.

12.    Defendant routinely scheduled Plaintiff to work at least 40 hours per week. About two times a week, Defendant gave Plaintiff a daily manifest showing an O-Time gap of more than 90 minutes between rides. Plaintiff occasionally received an unscheduled ride from the Dispatcher during the O-Time gap, so he was allowed to stay "on-the-clock" and be paid for his work. Much more often, Plaintiff did not receive an unscheduled ride from the Dispatcher during the O-Time gap, so he was taken off-the-clock for between two and six hours until his next scheduled pick-up.[1] Defendant's O-Time policies and practices caused Plaintiff to perform an average of between four and five hours of off-the-clock work each week.

13.    About two to three months into his employment, Plaintiff noticed that the hours showing on his paychecks did not match up with the number of hours he was working. Plaintiff

---

[1] O-Time gaps of five to six hours usually happened only when rides scheduled after an O-Time gap wound up cancelling, which meant Plaintiff stayed off-the-clock, either until his next scheduled pick-up or the end of his work day.

5

first complained about working without pay during O-Time gaps to his Supervisors in 2005. From time to time since 2005, Plaintiff has continued to raise the issue of unpaid O-Time work with multiple Supervisors, including: Veronica Burgess, Monica Harmon, Cheryl Jackson, Wayne Jones, Roland Shelton, Chauncey [Last name unknown] and Greenie [Last name unknown]. Plaintiff's Supervisors consistently responded to these inquiries by saying this is the way it works, the same policy applies to everyone and that nothing can be done to change it.

14. Throughout his employment, Plaintiff has spoken to many Paratransit Drivers about the O-Time gap issue. Based on these discussions, Plaintiff believes the Company's failure to pay wages for O-Time work is the "number-one problem" First Transit Drivers have and, further, that many Paratransit Drivers have left the Company over complaints about unpaid O-Time work.

### FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings his FLSA claim on an opt-in, collective basis pursuant to 29 U.S.C. § 216(b) for himself and all Paratransit Drivers who have worked in the First Transit depots in Redding, CA, Santa Cruz, CA, DuPage, IL, Hunterdon, N.J., Cuba, N.Y., Durham, N.C., Xenia, OH, Bethel Park, PA, Frankstown, PA, Conshohocken, PA, Philadelphia, PA, Pike Street, PA and Fort Bend, TX in any week during the maximum limitations period, including everyone who opted-in to *Stewart,* whose claims are limited by agreement to the period since October 1, 2019 (the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

16. Plaintiff belongs to the FLSA Collective he seeks to represent, because he worked as a full-time, hourly Paratransit Driver at the First Transit depot in Conshohocken, PA during the relevant period.

17. The FLSA Collective is "similarly situated," as defined by 29 U.S.C. § 216(b), because its members performed the same job and were subjected to the same "O-Time" policies

6

and practices described herein.

18. Plaintiff and the FLSA Collective do not meet any test for exemption under the FLSA.

19. Based on data produced in the *Stewart* case, Plaintiff believes the FLSA Collective includes more than 1,000 members. Defendant's payroll and personnel records, among other documents, will confirm the total number of people who qualify to participate in the FLSA Collective.

## COUNT I
## VIOLATION OF THE FLSA
## Unpaid Overtime Wages

20. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

21. Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

22. Plaintiff and the FLSA Collective members are "employees" as defined by 29 U.S.C. § 203(e)(1).

23. The wages Defendant pays to Plaintiff and the FLSA Collective are "wages" as defined by 29 U.S.C. § 203(m).

24. Defendant is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

25. Plaintiff and the FLSA Collective are similarly-situated individuals within the meaning of 29 U.S.C. § 216(b).

26. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce employers' failure to comply with the FLSA's requirements.

27. Throughout the relevant period, Defendant has been obligated to comply with the FLSA's requirements, Plaintiff and the FLSA Collective members have been covered employees entitled to the FLSA's protections, and Plaintiff and the FLSA Collective members have not been exempt from receiving wages required by the FLSA for any reason.

28. 29 U.S.C. § 207(a)(1) requires employers to pay their employees an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

29. Defendant has intentionally violated the FLSA by maintaining common scheduling, timekeeping and compensation policies and practices that include: providing paper and electronic manifests showing Paratransit Drivers' daily scheduled drop-offs and pick-ups, routinely scheduling Paratransit Drivers for O-Time gaps of more than 90 minutes, requiring Paratransit Drivers to hit the "in-service" button at the start of each O-Time gap to inform the dispatcher they are available for an unscheduled ride, requiring Paratransit Drivers to wait up to 30 minutes for the Dispatcher to provide them with an unscheduled ride, paying Paratransit Drivers for the first 30 minutes of O-Time (while they wait for the Dispatcher to provide a ride) but, if an unscheduled ride is not available, taking them off-the-clock until their next scheduled pick-up, typically one to four hours later, requiring Paratransit Drivers to comply with a long list of requirements that severely limit their personal freedom while serving Defendant's business interests during O-Time and failing to pay wages for Paratransit Drivers' O-Time work.

30. By engaging in this conduct, Defendant has acted with willful and/or reckless disregard for Plaintiff's and the FLSA Collective members' rights under the FLSA.

31. Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff and the FLSA Collective members all wages mandated by the FLSA.

32. Plaintiff and the FLSA Collective have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of overtime premium wages owed for overtime work they performed that provided Defendant with a direct and substantial benefit.

WHEREFORE, Plaintiff respectfully prays for an Order:

a. Certifying this matter to proceed as a collective action with respect to Count I;

b. Finding Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required overtime wages to Plaintiff and the FLSA Collective;

c. Granting judgment in favor of Plaintiff and the FLSA Collective against Defendant on Count I;

d. Awarding all available compensatory damages in amounts to be determined;

e. Awarding all available liquidated damages in amounts to be determined;

f. Awarding pre-judgment interest on all compensatory damages due;

g. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

h. Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

i. Awarding any further relief the Court deems just, necessary and proper; and

j. Maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing.

## JURY DEMAND

Plaintiff demands a jury trial as to all claims so triable.

Respectfully Submitted,

Dated: April 21, 2020

*/s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras
Teresa M. Becvar
STEPHAN ZOURAS, LLP
100 N. Riverside, Suite 2150
Chicago, IL  60606
312-233-1550
jzouras@stephanzouras.com
tbecvar@stephanzouras.com

*Attorneys for Plaintiff and the Putative FLSA Collective*