UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| STEVEN PENDLETON,<br><br>    **Plaintiff,**<br><br>    v.<br><br>FIRST TRANSIT, INC.,<br><br>    **Defendant.** | :<br>:<br>:<br>:<br>:    Case No. 3:23-cv-89<br>:<br>:<br>:    District Judge Michael J. Newman<br>:<br>:<br>: |

### JOINT MOTION AND MEMORANDUM OF LAW
### FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT
### INCLUDING ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

First Transit, Inc. ("First Transit"), Steven Pendleton ("Named Plaintiff"), and the 243 Opt-In Plaintiffs who were employed as First Transit Paratransit Drivers in thirteen locations in California, Illinois, New Jersey, New York, North Carolina, Ohio, Pennsylvania, or Texas ("Plaintiffs") (collectively, "the Parties"), jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The Parties have negotiated a settlement of this *bona fide* dispute following four years of motion practice, the exchange of substantial discovery to inform the Parties damage calculations, extensive arm's-length negotiations conducted by counsel well-versed in wage and hour litigation and a settlement conference overseen by Lynn P. Cohn, Clinical Professor of Law and Co-Director of the Center on Negotiation, Mediation, and Restorative Justice at Northwestern Pritzker School of Law.

The Parties submit the terms of their proposed Settlement Agreement (the "Agreement") are fair, reasonable, and adequate, particularly considering the existence of many disputed issues of fact and law with respect to liability, damages, and the propriety of collective treatment, and

1

additional uncertainty as to whether Plaintiffs would obtain a judgment in their favor, along with the risks of trial and possible appeals. *See generally* Settlement Agreement (Exhibit A).

## I. BACKGROUND

### A. Procedural History

On April 21, 2020, Plaintiff filed a Complaint in the Eastern District of Pennsylvania to redress policies and practices claimed to deny overtime wages to Paratransit Drivers for work they perform during "O Time," which is scheduled time spent waiting for passenger pick-ups during which Drivers are taken off-the-clock despite having to comply with requirements that limit their freedom while serving Defendant's business interests. *See* Complaint [Doc. 1]. Plaintiff claimed that Defendant's O-Time practices violate the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 ("FLSA") by denying overtime premium wages to its employees for scheduled work they perform with Defendant's knowledge and from which Defendant receives a substantial benefit. *Id.*

On May 29, 2020, Plaintiffs filed a Motion for FLSA conditional certification, seeking leave to disseminate notice to a putative Collective defined to include: "all people who have worked as a Paratransit Driver in the First Transit depots in Redding, CA, Santa Cruz, CA, DuPage, IL, Hunterdon, N.J., Cuba, N.Y., Durham, N.C., Xenia, OH, Bethel Park, PA, Frankstown, PA, Conshohocken, PA, Philadelphia, PA, Pike Street, PA and Fort Bend, TX." Notice Memo, p.1 [Doc. 26-2]. In support of their Motion, Plaintiffs introduced sworn declarations from ten First Transit drivers describing their personal experiences across many years of employment in several different states, their familiarity with Defendant's policies and practices, their interactions with managers responsible for implementing Defendant's hours of work, meal break, overtime, time reporting, and payroll policies, and their discussions with putative Collective members who

claimed the same problems with unpaid pre-shift, meal break and post-shift work. [Docs. 26-5 to 26-14].

On June 12, 2020, Defendant opposed Plaintiffs' Motion, principally claiming that each of its locations is "unique" and all its policies are "lawful," challenging Plaintiffs' credibility, and suggesting the putative Collective members do not share claims supported by common evidence. Def. Mem. [Doc. 31]. On June 19, 2020, Plaintiffs filed a Reply in support of their Motion that answered Defendant's arguments and explained why Plaintiffs' evidence more than adequately supported conditional certification and dissemination of notice to the putative collective. Reply Brief, pp. 1-11 [Doc. 35]. *See* Supplemental briefs [Docs. 58-59, 87-88]. On January 13, 2021, the original Court entered an Order granting FLSA conditional certification and authorizing Plaintiff to disseminate notice to the putative collective. *See* Order [Doc. 85].

During this same period, the Parties were also engaged in extensive litigation on many other issues, including: Defendant's Motion to Dismiss the claims of all non-Pennsylvania drivers, Plaintiff's efforts to avoid electronic discovery, Plaintiff's filing of multiple pre-notice opt-in forms, Defendant's Summary Judgment Motion challenging the merit of Plaintiff's claims, and Defendant's motion for interlocutory appeal of the Court's conditional certification ruling on jurisdictional grounds, among others. *See* Def. Motion to Dismiss briefing [Docs. 20, 28-29]; Protective Order filings. [Docs. 32, 38, 42]; Opt-In filings [Docs. 2, 6, 8, 18, 25, 27, 30, 35, 39-41, 45, 54, 56, 60, 62, 68, 71, 75-77, 79-80]; Def. Summary Judgment briefing [Docs. 64-66, 69-70, 74]; Def. Interlocutory Appeal filings [Docs. 82-83].

On May 4, 2021, the presiding Court placed this case in suspense pending the Third Circuit's decision in *Fischer v. Federal Express Corp.*, relating to its jurisdiction over out-of-state class members. [Doc. 113]. After the *Fischer* appeal was decided, the Parties submitted briefs

relating to an anticipated transfer to an Ohio district court. *See* Jurisdictional filings [Docs. 120-126]. On March 23, 2023, the presiding Court ordered this action transferred to the Southern District of Ohio. *See* Order [Doc. 127].

In May 2023, Defendant filed a Motion to Stay proceedings pending the Sixth Circuit's decision in *Clark v. A&L Home Care and Training Ctr. See* Motion [Doc. 137]. In June 2023, Defendant filed a motion asking this Court to reconsider and vacate the original Court's January 13, 2021 conditional certification ruling. The Parties thoroughly litigated these issues. *See* Pleadings [Docs. 142-149, 151-153]. On March 12, 2024, this Court denied Defendant's motion to stay as moot and denied Defendant's Reconsideration Motion on the merits, paving the way for continued litigation on the merits. *See* Order [Doc. 154]. On March 25, 2024, after conferring at length, the Parties filed a Joint Motion to Stay to permit them "to pursue settlement discussions informed by an exchange of focused work, time, and pay discovery." *See* Motion [Doc. 155]. In April, 2024, the Parties agreed to retain Northwestern University Law School Professor Lynn Cohn to preside over a private mediation session that was ultimately scheduled for August 1, 2024.

Having mediated their dispute and engaged in subsequent discussions that resulted in an arm's-length negotiated settlement, the Parties now seek this Court's approval of a proposed FLSA settlement in which Defendant has agreed to pay $1,000,000.00 to resolve FLSA claims belonging to the Named Plaintiff and 243 Opt-Ins.

### B. Legal Background

The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206-207. The FLSA does not specifically define what is meant by the term "work," *id.*, but the Department of Labor has promulgated regulations containing "Principles for Determination of

Hours Worked" to inform this issue. *See* 29 C.F.R. §§ 785.11-785.13. These principles state that any work an employer "suffers or permits" to be performed must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed:

> **§ 785.11 General.**
> *Work not requested but suffered or permitted is work time*. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. *The employer knows or has reason to believe that he is continuing to work and the time is working time* (citations omitted).
>
> **§ 785.12 Work performed away from the premises or job site.**
> *The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked.*
>
> **§ 785.13 Duty of management.**
> *In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.*

*See* 29 C.F.R. §§ 785.11-785.13 (emphasis added). Plaintiffs allege that Defendant violated the FLSA and its implementing regulations because it did not pay Plaintiffs all overtime wages owed for work they performed after being taken off-the-clock during O-Time gaps.

## II. THE PARTIES' PROPOSED SETTLEMENT

The Parties, with the assistance of Professor Cohn, negotiated for the payment of a gross settlement amount of $1,000,000.00 to resolve all claims that were asserted, or could have been asserted, by Plaintiffs against Defendant, including claims for attorneys' fees, costs, liquidated damages, and claims arising from disputes related to wages. As outlined in their Settlement Agreement, the Parties propose to distribute this sum as follows:

5

    a.    $298,900.00 to Plaintiffs (individual amounts to be determined from information in Exhibit A), less necessary taxes and withholdings, representing alleged wage-based damages, made payable to Plaintiffs, and documented on W-2 Forms;

    b.    $298,900.00 to Plaintiffs (individual amounts to be determined from information in Exhibit A), representing alleged non-wage liquidated damages, made payable to Plaintiffs, and documented on 1099 Forms;

    c.    $26,000.00 in Service Awards, paid to Named Plaintiff Steven Pendleton ($15,000.00), original Opt-In Plaintiff Hasan Abul ($3,000.00), and early Opt-In Plaintiffs Tiveeka Bates, Vincent Bock, Marie Hill Faison, Thomas Arthur Holmes, Mohamed Lmimouni, Emelia Munguia, Sinyon Rice, and Lisa Sheppard ($1,000.00 each) in recognition of services rendered on behalf of the Class and documented on 1099 Forms;

    d.    $18,350.00 in litigation costs to Stephan Zouras LLC (to be shared with Karon LLC), documented on a 1099 Form;

    e.    $7,850.00 in settlement administration costs to Analytics LLC; and

    f.    $350,000.00 in attorney's fees to Stephan Zouras, LLC (to be shared with Karon LLC), documented on a 1099 Form.

The approximately $600,000.00 allocated to the 244 Plaintiffs represents a fair and reasonable result because of the uncertainty of determining whether Defendant violated the FLSA, determining whether the proposed class would be decertified because of individual factual differences between their claims and work environments, proving the unpaid overtime the 244 Plaintiffs worked, and because of considerations associated with the risks, costs, and delays associated with continuing this litigation on a contested basis through trial and any appeals.

By cashing their settlement checks, Plaintiffs will release Defendant from "all wage-related charges, complaints, claims, and liabilities of any kind whatsoever, known or unknown, suspected or unsuspected, which Plaintiffs at any time have, had, or claimed to have against First Transit, including all claims under the Fair Labor Standards Act and state wage laws." *See* Agreement at § 5(a). Any Plaintiff who does not timely sign and cash their settlement check will not be bound by any release of claims.

### III. STANDARD FOR SETTLEMENT APPROVAL

Considering the lack of direct guidance from the Sixth Circuit on the approval process for FLSA settlements, Courts in this Circuit typically follow the process set forth by the Eleventh Circuit in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See, e.g., Pitty v. Conrad's Laserwash Co., Inc.*, 2023 WL 7166917, *1 (N.D. Ohio Oct. 31, 2023); *Rafferty v. Hat World, Inc.,* 2020 WL 5703925, *1 (N.D. Ohio Sept. 24, 2020). Under *Lynn's Food*, a district court "must scrutinize the proposed settlement for fairness and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Pitty,* 2023 WL 7166917 at *1. To make this determination, Ohio District Courts typically consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *Id.* The Parties' proposed settlement satisfies all these considerations.

### IV. THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT

#### A. The Proposed Settlement Is Fair And Reasonable Considering The Lack Of Fraud Or Collusion Behind The Settlement

Under this factor, courts consider if the proposed settlement is a result of arm's-length negotiations between parties represented by able counsel, and whether fraud or collusion can be seen on the face of the parties' agreement. *Tina Ulm v. Artemis Care LLC*, 2024 WL 149755, *2 (N.D. Ohio Jan. 12, 2024); *Ramsey v. FirstEnergy Corp.*, 2023 WL 6794478, *3 (N.D. Ohio Oct. 13, 2023). Here, the Parties are represented by experienced wage and hour and class action counsel and negotiated this settlement with the direct involvement of Professor Cohn, who ensured both that the Parties' negotiations took place at arm's-length and that the settlement's material terms do

7

not involve fraud or collusion. Zouras Dec., ¶¶ 6-7, 11-14, 16 (Exhibit B).

  **B.  The Proposed Settlement Is Fair And Reasonable Considering The Complexity, Expense, And Likely Duration Of The Litigation**

Under this factor, courts consider if the proposed settlement is justified by the complexity, expense, and likely duration of the litigation. It is well-established that class and collective actions involve sufficient complexity to satisfy this factor. *Lucyk v. Materion Brush Inc.*, 2023 WL 4405280, *3 (N.D. Ohio July 7, 2023). Further, although this matter has been pending since April 2020, there have been several long delays or periods of inactivity, including from May 2021 to August 2022 (pending the Third Circuit ruling in *Fischer*), from September 2022 to March 2023 (pending resolution of the Parties' transfer motions), and from June 2023 to March 2024 (pending resolution of Defendant's reconsideration motion). As a result, the Parties have not yet completed all case discovery, finally resolved the propriety of collective treatment, or received all merits rulings that would be necessary to resolve Plaintiffs' claims – meaning that substantial additional expenditures of time and money would be required to conclude the case absent settlement.

  **C.  The Proposed Settlement Is Fair And Reasonable Considering The Stage Of The Proceedings And The Amount Of Discovery Completed**

Under this factor, courts consider if the parties have engaged in enough discovery to adequately assess and evaluate merits, liability, and damages issues. *Pavlov v. Cont'l Cas. Co.*, 2009 WL 10689011, *9 (N.D. Ohio Oct. 7, 2009). As referenced above, the Parties in this case agreed to engage in settlement negotiations in March 2024, *see* Joint Motion [Doc. 155] and, from this time to their mediation on August 1, 2024, had ample opportunity to discuss, discover, and understand the key merits, liability, and damages issues in this action informed by the thousands of pages of discovery responses, documents, data, and deposition transcripts they have collected and exchanged relating to the Parties' claims and defenses, including the pay rates, dates of

employment, job duties, time and payroll records, policies, manuals, and damages at issue in this action. Zouras Dec. at ¶¶8, 10-11, 13-14, 17, 27 (Exhibit B). These efforts necessarily demonstrate that the Parties' settlement is adequately informed.

### D. The Proposed Settlement Is Fair And Reasonable Considering The Probability Of Plaintiffs' Success On The Merits

This factor requires courts to assess whether the litigation "is uncertain in terms of duration, cost, and result" and, if so, to what extent this analysis supports the proposed settlement. *Harsh v. Kalida Mfg., Inc.*, 2021 WL 4145720, *6 (N.D. Ohio Sept. 13, 2021).

In this case, Plaintiffs challenge whether Defendant has adequately tracked and paid its Paratransit Drivers for all the work they claim to have performed after being taken off-the-clock during O-Time gaps. *See* Complaint at ¶¶ 9-14 [Doc. 1]. Defendant denies all these allegations and, at mediation, produced documentary and video evidence refuting these allegations as to certain Plaintiffs. Zouras Dec. at ¶13 (Exhibit B). Further, Defendant denies that Plaintiffs' claims, such as they are, can be collectively resolved given claimed differences in the policies, procedures, and practices applied across all thirteen of the work locations (in eight different states) involved in this action. As a result, the Parties have a good-faith basis to disagree, not only about whether Plaintiffs' claims can proceed on a collective basis, but also whether these claims can (or should) prevail on the merits.

Because of the significant disparity between their positions, both Parties face substantial risk and uncertainty from continued litigation, including significant expenses associated with prosecuting or defending these claims and any appeals, and potential disruption to their lives, continued business operations, and union negotiations. Accordingly, without conceding their opponent's conclusions, both Parties agree that proceeding with the settlement set forth in their Agreement is in their best interests. This situation necessarily demonstrates that the Parties'

proposed settlement is fair and reasonable considering the probability of Plaintiffs' success on the merits. *Gresky v. Checker Notions Co. Inc*., 2022 WL 3700739, *6 (N.D. Ohio Aug. 26, 2022) (finding similar considerations favor approval); *Harsh v. Kalida Mfg., Inc*., 2021 WL 4145720, *6 (N.D. Ohio Sept. 13, 2021) (same).

### E. The Proposed Settlement Is Fair And Reasonable Considering The Range Of Possible Recovery

Under this factor, courts consider "both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)." *In re Polyurethane Foam Antitrust Litig*., 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016).

Approaching the mediation, based on its view of the relevant evidence, Defendant placed a *de minimis* value on Plaintiffs' claims and, for most of the mediation, no more than $200,000.00 to resolve Plaintiffs' claims. Zouras Dec. at ¶13 (Exhibit B). During the mediation, defense counsel presented multiple arguments against the cohesiveness and merit of Plaintiffs' claims, including that: Plaintiffs routinely engaged in personal (*i.e.,* non-work-related) activities during the time they were claiming to be "at work" for purposes of their claims; only two of the thirteen work locations at issue possibly engaged in the challenged conduct; Plaintiffs' claims were untimely, as they had not sought equitable tolling after the *Clarke* decision; and Plaintiffs did not regularly work over 40 hours per week. *Id.* As a result, defense counsel were confident that Plaintiffs' entitlement to unpaid overtime wages would require an individual analysis. *Id.* Further, absent settlement, Defendant can still raise all these arguments to challenge Plaintiffs' entitlement to proceed on a representative basis and the merit of their claims. *Id.*

Informed by all the information received from Plaintiffs and exchanged between the Parties, and the 2020 settlement negotiated in a related case, *Stewart v. First Transit*, Plaintiffs' damage calculations valued the 244 Plaintiffs' claims at $1,412,790.00. Zouras Dec. at ¶14, 31

(Exhibit B). The $1,000,000.00 value of the Parties' proposed settlement represents 70.8% of this calculation. *Id.* Considering the substantial risks Plaintiffs would face in maintaining class status, surviving summary judgment, and prevailing at trial, they submit this recovery represents more than a fair result. After deductions for the proposed service awards, attorney's fees, and case costs, Plaintiffs anticipate being able to distribute approximately $600,000.00 in damages to the 244 Plaintiffs, providing an average award of approximately $2,459.00 per person. Settlement Agreement at § 1 (Exhibit 1); Zouras Dec. at ¶ 31 (describing Service Award recipient efforts).

As such, the Parties believe their proposed settlement is fair and reasonable considering the range of possible recovery. *See In re Polyurethane Foam*, 168 F. Supp. 3d at 1001 ("because [s]ettlement is the offspring of compromise; the question...is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion"); *Gordon v. Dadante*, 2008 WL 1805787, *13 (N.D. Ohio Apr. 18, 2008), *aff'd*, 336 Fed. Appx. 540 (6th Cir. 2009) ("due to the risks of litigation and the costs of litigation in time and money, a reasoned settlement need not necessarily rise to the level of 100% of the actual damages figure. Instead, a number that both accurately compares an estimate of the percentage chance of success, and accounts for the costs of litigation, may fall well short of that threshold").

### F. The Proposed Settlement Is Fair And Reasonable Considering The Opinions Of Counsel

Last, courts are asked to consider the opinions of counsel who have negotiated the settlement in assessing its fairness. Here, counsel for the Parties believe the Settlement they negotiated with the assistance of Professor Cohn is fair and reasonable considering the risk, costs, and delay of further litigation. Zouras Dec. at ¶16 (Exhibit B). Courts routinely consider similar opinions to support settlement approval. *Reitz v. Laurel Lake Retirement Community, Inc.*, 2024 WL 1514549, *2 (N.D. Ohio Apr. 8, 2024); *Lucyk v. Materion Brush Inc.*, 2023 WL 4405280, *5

(N.D. Ohio July 7, 2023); *Gresky v. Checker Notions Co. Inc.*, 2022 WL 3700739, *2 (N.D. Ohio Aug. 26, 2022).

V. **CONCLUSION**

For the reasons set forth above, the Parties respectfully ask the Court to enter their proposed Order granting the instant Motion and approving their proposed settlement in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ David J. Cohen* | */s/ Matthew J. Hank* |
| David J. Cohen (*pro hac vice*) | Alex R. Frondorf, Bar No. 0087071 |
| STEPHAN ZOURAS, LLC | LITTLER MENDELSON, P.C. |
| 604 Spruce Street | Key Tower |
| Philadelphia, PA 19106 | 127 Public Square, Suite 1600 |
| (215) 873-4836 | Cleveland, OH  44114-9612 |
| *dcohen@stephanzouras.com* | 216.696.7600 |
| | *afrondorf@littler.com* |
| James B. Zouras (*pro hac vice*) | |
| STEPHAN ZOURAS, LLC | Matthew J. Hank, Admitted *Pro Hac Vice* |
| 220 W. Adams Street, Suite 2020 | LITTLER MENDELSON, P.C. |
| Chicago, IL  60606 | 1601 Cherry Street, Suite 1400 |
| (312) 233-1550 | Philadelphia, PA 19102-1321 |
| *jzouras@stephanzouras.com* | 267.402.3000 |
| | *mhank@littler.com* |
| Daniel R. Karon | |
| KARON LLC | *Attorneys for Defendant* |
| 700 W. St. Clair Avenue, Suite 200 | |
| Cleveland, OH 44113 | |
| (216) 622-1851 | |
| | |
| *Attorneys for Plaintiffs* | |

Dated: August 20, 2024